# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
# AT NASHVILLE

Assigned on Briefs November 10, 2010

## STATE OF TENNESSEE v. VERONICA LYNN FLOYD

**Direct Appeal from the Circuit Court for Bedford County**
**No. 16865     Lee Russell, Judge**

---

**No. M2010-00177-CCA-R3-CD - Filed December 8, 2010**

---

The defendant, Veronica Lynn Floyd, pled guilty in the Bedford County Circuit Court to three counts of theft of property over $10,000, Class C felonies, and one count of theft of property over $1000, a Class D felony. She was sentenced as a Range I offender to five years on each of the theft over $10,000 convictions, with two of the counts to be served concurrently and one count consecutively to the others, and three years on the theft over $1000 conviction, to be served consecutively to the other counts, for a total effective sentence of thirteen years. The defendant was ordered to serve nine months of her sentence in the county jail with the remaining term on community corrections. On appeal, she argues that the trial court imposed an excessive sentence. After review, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

ALAN E. GLENN, J., delivered the opinion of the Court, in which THOMAS T. WOODALL and JAMES CURWOOD WITT, JR., JJ., joined.

Gregory D. Smith, Clarksville, Tennessee (on appeal); and Michael J. Collins, Assistant Public Defender (at trial), for the appellant, Veronica Lynn Floyd.

Robert E. Cooper, Jr., Attorney General and Reporter; Clark B. Thornton, Assistant Attorney General; Charles Frank Crawford, Jr., District Attorney General; and Michael D. Randles, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## FACTS

The defendant was indicted on four counts of theft of property. Counts one, two and

three alleged that the defendant appropriated $10,000 or more but less than $60,000 from the victim "on divers[e] days" in 2006, 2007, and 2008, respectively. Count four alleged that the defendant appropriated $1000 or more but less than $10,000 from the victim "on divers[e] days" in 2009. The underlying facts of the case were summarized by the State at the guilty plea hearing as follows:

> The victim in this case is a gentlemen named Bobby Kirk. He's an elderly gentlemen who, I believe, is also disabled . . . . [He] may have some beginning stages of Alzheimer's, things like that. He lives here in Bedford County.

> Some years ago, the defendant became, essentially, a caregiver for him. She would help, I guess, get his groceries, [and] various other things . . . .

> [The victim] had a couple of sources of income. I think there was a pension and then maybe a disability payment, things like that, which, of course, his bills and such were supposed to be paid out of.

> Well, over the years, some of his bills would not get paid, but even the ones that would, you could look and see how much money he was bringing in each month and how much was getting paid that could be specifically attributed to him, and there would be, typically, well over $1,000 left over each month, but he had -- once this began, the investigation began and such, he had really nothing to show for it. So there's not been an accumulation of savings over the years.

> And then over the years, the defendant began spending some of that money for things that would probably be generally associated just for her benefit, I think, towards a house, . . . some of her expenses associated with that house, such as cable television and telephone, and I think there was maybe a General Sessions charge, where she had a fine and cost or some restitution or something, and [the victim's] money was applied towards that. So there was spending of the [victim's] money by the defendant, which was not for the benefit of explicitly to [the victim].

Under questioning by the court at the plea hearing, the defendant stated that she had access to the victim's money because she had a power of attorney "to pay his bills and stuff." She acknowledged that she could still commit theft even if she had a power of attorney if she took the victim's money without his permission with intent to deprive him of it.

The trial court accepted the defendant's guilty pleas to the four counts as charged and soon thereafter conducted a sentencing hearing. At the hearing, James Rodney Kirk, the victim's brother and conservator, testified that the victim was in a nursing home suffering from early onset Alzheimer's, diabetes, peripheral artery disease, pulmonary disease and five other permanent diseases and illnesses. He said that the victim was hospitalized in November 2008, near death, suffering from the aforementioned illnesses and twelve other temporary, but serious, ailments. He explained that the ailments were the "culmination of [the defendant's] lack of care for [the victim] over the three year duration of their relationship." Kirk stated that the defendant's "lies, deceit, manipulation, triangulation, fraud and theft took [the victim] to this near death physical deterioration" as well as requiring two psychiatric hospitalizations due to suicide threats. He said that the defendant manipulated the victim to make him feel isolated, helpless, and hopeless. Kirk explained that the defendant also led to the victim's financial devastation because she diverted almost $40,000 of the victim's income for her own use and left him with thousands of dollars of unpaid bills despite his having adequate income to pay them.

After hearing the arguments of the parties, the trial court sentenced the defendant to five years on each of the theft over $10,000 convictions, with the first two counts to be served concurrently and the third count consecutively to the others, and three years on the theft over $1000 conviction, to be served consecutively to the other counts, for a total effective sentence of thirteen years. The court ordered a sentence of split confinement – ninety days in confinement in the county jail with the remainder served on community corrections.

## ANALYSIS

The defendant argues that the sentence imposed by the trial court was excessive because the trial court imposed consecutive sentences and ordered that she serve the non-incarcerative portion of her sentence on community corrections instead of probation.

When an accused challenges the length and manner of service of a sentence, it is the duty of this court to conduct a *de novo* review on the record with a presumption that "the determinations made by the court from which the appeal is taken are correct." Tenn. Code Ann. § 40-35-401(d) (2006). This presumption is "conditioned upon the affirmative showing in the record that the trial court considered the sentencing principles and all relevant facts and circumstances." State v. Ashby, 823 S.W.2d 166, 169 (Tenn. 1991). The presumption does not apply to the legal conclusions reached by the trial court in sentencing the accused or to the determinations made by the trial court which are predicated upon uncontroverted facts. State v. Butler, 900 S.W.2d 305, 311 (Tenn. Crim. App. 1994); State v. Smith, 891 S.W.2d 922, 929 (Tenn. Crim. App. 1994); State v. Bonestel, 871 S.W.2d 163,

166 (Tenn. Crim. App. 1993), overruled on other grounds by State v. Hooper, 29 S.W.3d 1, 9 (Tenn. 2000).

In conducting a *de novo* review of a sentence, this court must consider (a) any evidence received at the trial and/or sentencing hearing, (b) the presentence report, (c) the principles of sentencing, (d) the arguments of counsel relative to sentencing alternatives, (e) the nature and characteristics of the offense, (f) any mitigating or enhancement factors, (g) any statistical information provided by the administrative office of the courts as to Tennessee sentencing practices for similar offenses, (h) any statements made by the accused in his own behalf, and (i) the accused's potential or lack of potential for rehabilitation or treatment. Tenn. Code Ann. §§ 40-35-103, -210 (2006); State v. Taylor, 63 S.W.3d 400, 411 (Tenn. Crim. App. 2001). The party challenging the sentence imposed by the trial court has the burden of establishing that the sentence is erroneous. Tenn. Code Ann. § 40-35-401 (2006), Sentencing Commission Cmts.; Ashby, 823 S.W.2d at 169.

In imposing a specific sentence within a range, a trial court "shall consider, but is not bound by" certain advisory sentencing guidelines, including that the "minimum sentence within the range of punishment is the sentence that should be imposed" and that "[t]he sentence length within the range should be adjusted, as appropriate, by the presence or absence of mitigating and enhancement factors[.]" Tenn. Code Ann. § 40-35-210(c)(1), (2). The weighing of the various mitigating and enhancement factors is "left to the trial court's sound discretion." State v. Carter, 254 S.W.3d 335, 345 (Tenn. 2008).

In sentencing the defendant, the trial court noted that the defendant had a "slight" criminal record, consisting of passing a worthless check and disorderly conduct, and gave the factor very little weight. See Tenn. Code Ann. § 40-35-114(1). The court observed that the victim was particularly vulnerable because of both a physical and mental disability, see id. § 40-35-114(4), and that such factor was present "in a very dramatic way," thus giving it "great weight." The court also found that the defendant abused a position of private trust, see id. § 40-35-114(14), in that she was supposed to have been "taking care of [the victim's] resources for his benefit and instead, on a very major scale, over four years, was appropriating money for herself." The court determined that such factor was also present "in a very dramatic way." In response to the defendant's argument regarding mitigating factors, the trial court agreed that the taking of money did not cause nor threaten serious bodily harm, see id. § 40-35-113(1), but gave the factor very little weight. As such, the trial court reached a sentence of five years on each of the defendant's C felony convictions and three years on her D felony conviction. The defendant does not appear to contest the length of sentence imposed by the trial court, and the term imposed was properly within the trial court's discretion.

Tennessee Code Annotated section 40-35-115(b) provides that a trial court may, in its discretion, order sentences to run consecutively if it finds by a preponderance of the evidence, as pertinent here, that the defendant is an offender whose record of criminal activity is extensive. Tenn. Code Ann. § 40-35-115(b)(2) (2006). In this case, the trial court found that the defendant had an extensive record of criminal activity as to the convictions stemming from her 2008 and 2009 activities but not with regard to the convictions stemming from her 2006 and 2007 activities. The court reasoned that by 2008 and 2009, the defendant's conduct over the previous two and three years, respectively, was applicable as extensive criminal history to the subsequent conduct.

We have previously held that the "[c]urrent offenses may be used in determining criminal history for the purposes of consecutive sentencing." State v. Carolyn J. Nobles, No. M2006-00695-CCA-R3-CD, 2007 WL 677861, at *12 (Tenn. Crim. App. Mar. 7, 2007) (citing State v. Cummings, 868 S.W.2d 661, 667 (Tenn. Crim. App. 1992)). Cummings presented a situation where a defendant had no prior criminal record but pled guilty to eight offenses. 868 S.W.2d at 663-64. In that case, this court affirmed the trial court's imposition of consecutive sentences on the basis of the defendant's having an extensive record of criminal activity. Id. at 667. Other panels of this court have also affirmed in similar scenarios. See, e.g., State v. Mark Robert Carter, No. M2007-02706-CCA-R3-CD, 2009 WL 1349206, at *10 (Tenn. Crim. App. May 14, 2009), perm. to appeal denied (Tenn. Sept. 28, 2009); Carolyn J. Nobles, 2007 WL 677861, at *12; State v. Brian Lee Cable, No. E2005-00608-CCA-R3-CD, 2006 WL 1381484, at *8 (Tenn. Crim. App. May 19, 2006), perm. to appeal denied (Tenn. Sept. 25, 2006); State v. Monsanto Undrez Cannon, No. M2005-01258-CCA-R3-CD, 2006 WL 16324, at *5 (Tenn. Crim. App. Jan. 4, 2006); State v. Rachel N. Bennett, No. M2002-01215-CCA-R3-CD, 2003 WL 1562090, at *3 (Tenn. Crim. App. Mar. 26, 2003).

In arguing that consecutive sentencing was inappropriate, the defendant attempts to distinguish Carolyn J. Nobles from the facts of her case on the ground that she only had four theft convictions in contrast to Nobles' seventy-one check forgery convictions. It is true that the actual number of the defendant's convictions is lower, but such is explained because Nobles was charged per check forgery; whereas the defendant was charged of theft per year, not for each discrete appropriation. In some regards, the defendant's criminal activity was more extensive than Nobles' in that the defendant's conduct took place over a four-year period in contrast to Nobles' "four months and a week." See Carolyn J. Nobles, 2007 WL 677861, at *7. We conclude that the trial court did not abuse its discretion in imposing consecutive sentences on two of the convictions.

A defendant who receives a sentence of ten years or less is eligible for probation, subject to certain exceptions. Tenn. Code Ann. § 40-35-303(a) (2006). Even if eligible,

however, the defendant is not automatically entitled to probation as a matter of law. See Tenn. Code Ann. § 40-35-303(b). The burden is on the defendant to show the denial of probation was improper. Id.; see also State v. Summers, 159 S.W.3d 586, 599-600 (Tenn. Crim. App. 2004) (citing Ashby, 823 S.W.2d at 169); State v. Baker, 966 S.W.2d 429, 434 (Tenn. Crim. App. 1997) (stating that "[a] criminal defendant seeking full probation bears the burden on appeal of showing the sentence actually imposed is improper, and that full probation will be in both the best interest of the defendant and the public").

There is no bright line rule for determining when a defendant should be granted probation. State v. Bingham, 910 S.W.2d 448, 456 (Tenn. Crim. App. 1995), overruled on other grounds by Hooper, 29 S.W.3d at 9-10. Every sentencing decision necessarily requires a case-by-case analysis. Id. Factors to be considered include the circumstances surrounding the offense, the defendant's criminal record, the defendant's social history and present condition, the need for deterrence, and the best interests of the defendant and the public. State v. Goode, 956 S.W.2d 521, 527 (Tenn. Crim. App. 1997). Another appropriate factor for a trial court to consider in determining whether to grant probation is a defendant's credibility or lack thereof, as this reflects on the defendant's potential for rehabilitation. Id. Also relevant is whether a sentence of probation would unduly depreciate the seriousness of the offense. See State v. Davis, 940 S.W.2d 558, 559 (Tenn. 1997); Bingham, 910 S.W.2d at 456.

To qualify for consideration for punishment in the community, an offender must meet all of the following criteria:

> (A) Persons who, without this option, would be incarcerated in a correctional institution;

> (B) Persons who are convicted of property-related, or drug-or alcohol-related felony offenses or other felony offenses not involving crimes against the person as provided in title 39, chapter 13, parts 1-5;

> (C) Persons who are convicted of nonviolent felony offenses;

> (D) Persons who are convicted of felony offenses in which the use or possession of a weapon was not involved;

> (E) Persons who do not demonstrate a present or past pattern of behavior indicating violence; [and]

> (F) Persons who do not demonstrate a pattern of committing violent

offenses[.]

Tenn. Code Ann. § 40-36-106(a)(1) (2006).

In determining the manner of service of the defendant's sentence, the trial court stated that there appeared to be "little potential for rehabilitation in the absence of serving some sentence." The court observed the need of the victim to receive restitution for his loss and the need of preventing the defendant from similar future employment. The court ordered that the defendant serve nine months of her sentence with the remainder served on community corrections.

The defendant argues that the trial court should have ordered that she serve the balance of her sentence on probation instead of community corrections. As the defendant correctly points out, she is statutorily eligible for probation. However, we discern from the trial court's findings that the court was concerned about the defendant's potential for rehabilitation and that it considered the best interest of the public and the circumstances of the offenses in apparently concluding that the increased supervision requirements of community corrections were appropriate for the defendant. We cannot conclude that the trial court abused its discretion in the manner of service of sentence imposed.

## <u>CONCLUSION</u>

Based on the foregoing authorities and reasoning, we affirm the judgments of the trial court.

_____

ALAN E. GLENN, JUDGE